MICHAEL T. RISHER (SB# 191627)
mrisher@aclunc.org
LINDA LYE (SB# 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF
NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

HANNI FAKHOURY (SB# 252629)
hanni@eff.org
LEE TIEN (SB# 148216)
tien@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiffs
JOHN DOE, et al.
on behalf of themselves and others similarly situated

FILED
2012 NOV -7 A 9:51
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

TEH

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, JACK ROE, and CALIFORNIA REFORM SEX OFFENDER LAWS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA D. HARRIS, Attorney General of California; and CITY OF ALAMEDA,<br><br>Defendants. | Civil Case No. C 12 5713<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, for their Complaint in this action, allege and aver as follows:

## INTRODUCTION

1. This is a challenge to a just-enacted California statute that requires more than 73,000 Californians who are required to register under California Penal Code § 290 as a result of being convicted of a sex-related offense to immediately provide the police with their Internet identifiers and service providers. These requirements, enacted as part of Proposition 35, cover individuals who were convicted of a wide range of crimes, including misdemeanor indecent exposure, at any point since July 1, 1944, and they require registrants to provide information about online activities that have no possible relationship to criminality, such as the screen names they use to post comments about articles on a newspaper's website or names that they use to access political discussion groups. In addition, when registrants use a new screen name, they must now provide information about that name to the police within 24 hours. These new requirements burden the online speech of all such persons, infringe on their right to engage in lawful, anonymous speech on the Internet, and require them to reveal their membership in online groups, including groups devoted to political reform. Because they sweep much too broadly in terms of who must comply with them and the types of information they must provide, they are overbroad, in violation of the First Amendment. In addition, the statutory definitions of "Internet identifier" and "Internet service provider," which do not comport with the common understanding of these terms, are unconstitutionally vague. As a result of these and other constitutional infirmities, the statutes are facially invalid and cannot be enforced.

## JURISDICTION AND VENUE

2. This action arises under 42 U.S.C. § 1983 and the United States Constitution. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3. The Defendants are all public officials of the State of California or its political subdivisions. Each of the Defendants resides within this District and/or performs official duties within the State of California. This Court, accordingly, has personal jurisdiction over each of the Defendants.

4. Venue properly lies within this District under 28 U.S.C. § 1391(b). One or more of the named Defendants perform their official duties in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims have occurred or will occur in this District.

**INTRADISTRICT ASSIGNMENT**

5. Pursuant to Local Rule 3-2, this action may properly be assigned to the San Francisco or Oakland divisions of this Court because a substantial part of the events or omissions which give rise to the claims in this action will occur in Alameda County, where Plaintiff Doe resides, engages in anonymous Internet speech, and will be subject to the requirements of Proposition 35.

**THE PARTIES**

**Plaintiffs**

6. Plaintiff Doe is an individual residing in the City of Alameda, in Alameda County, California, who is required to register with Defendant City of Alameda under Penal Code § 290 because he was convicted of two registerable offenses in 1986. Neither of them involved the Internet or a stranger. Doe has not been arrested or convicted of any crime since he was released from custody for those offenses in 1991. He is currently 75 years old.

7. Doe engages in a wide variety of online speech, including participation in online discussions about political topics. Some of Doe's online speech is rendered anonymous through the use of screen names or other pseudonyms. Doe fears retaliation and social stigma if he and other registrants are unable to participate anonymously in online dialogue. In addition, Doe would be deterred from online speech by the burden of documenting and reporting the Internet service providers and Internet identifiers that he uses. As a result, if Doe were required to disclose to law enforcement all Internet service providers and Internet identifiers that he uses, he would refrain from at least some online speech due to the fear of retaliation and the burdens of reporting. If Doe were required to disclose his identity in publicly filed pleadings in this action, Plaintiff would also be reluctant to participate in this litigation due to fear of retaliation.

8. Plaintiff Roe is an individual who is required to register under Penal Code § 290 when he resided in California because of convictions that occurred before 1993. Neither of them involved the Internet or a stranger. Since his release from custody in the late 1990s he has never been arrested or convicted of any crime.

9. Roe engages in a wide variety of online speech, including through participation in online discussion forums about political topics and the posting of comments in response to articles on the websites of newspapers. Much of this speech is anonymous. Roe posts online comments from the perspective of a registered sex offender but does so anonymously because of the fear of retaliation and social stigma associated with such status. Roe has experienced retaliation in the past on the basis of his status as a registered sex offender. As a result, if Roe were required to disclose to law enforcement all screen names he uses to engage in online speech, he would cease engaging in such speech because of the fear of the consequences of losing anonymity and the burdens of registration. If Roe were required to disclose his identity in publicly filed pleadings in this action, he would also be reluctant to participate in this litigation due to fear of retaliation.

10. Roe had lived in California nearly his entire life and would like to do so again. However, his concerns about having to provide the government with information about his lawful online speech, and the practical burdens of doing so, have led him to leave the state, and he now resides elsewhere. These laws are all that are keeping him from returning; he intends to return to California if the law that he and the other Plaintiffs are here challenging are held unconstitutional.

11. Plaintiff California Reform Sex Offender Laws ("California Reform") is a California tax-exempt corporation organized under 501(c)(4) of the Internal Revenue Code. California Reform's mission is to protect the rights of those accused or convicted of sex crimes. California Reform believes that no sexual abuse is ever acceptable; that sex offense laws and policies should be based on sound research and common sense, not fear, panic, or paranoia; that current laws and policies that paint all sex offenders with one broad brush are counterproductive, wasteful, and cause needless harm; that each offense must be judged on its own merits, with a

punishment that fits the crime and does not waste taxpayer dollars; that the public sex offender registry and residency restriction laws do not protect children, but instead ostracize and dehumanize individuals and their families; and that money spent on purely punitive measures would be better used for prevention, healing, and rehabilitation. California Reform has members who are registrants throughout the state.

12. California Reform maintains a website, http://californiarsol.org/. One of its purposes in maintaining this website is to inform the public and its members about legal and policy issues relating to persons who are required to register under § 290 and to promote political and social change on these issues. For example, these are a few of the many articles and information that appeared on the website in October and November of 2012: information about a pending proposal in Anaheim to enact an ordinance banning registrants from its parks, a notice of a California Reform meeting to be held on November 10 in Los Angeles, information about a recent California Court of Appeals decision upholding an injunction prohibiting the enforcement in San Diego of a state law restricting where registrants can live. The website also included an exhortation for people to vote in the 2012 election and links to information about how to register to vote in California and who is eligible to do so. California Reform also used the website to help it meet its goal of obtaining 500 signatures on a petition to the Orange County District Attorney challenging a county ordinance that prohibits all registrants from entering parks, beaches, harbors, and other recreational areas.

13. The California Reform website allows people to comment on these items, and people regularly do so anonymously. For example, as of November 2, one item about the Anaheim Parks ban included 13 comments, ranging from expressions of thanks for California Reform's advocacy efforts to statements that such laws are unconstitutional and bad policy. An item about the November 10 meeting had generated 8 comments, including questions about who would be allowed to attend and how to do so. As their content often makes clear, many of the persons who comment are registrants with questions or comments about how these laws affect them and with updates on efforts to change California's registration law.

14. A discussion of the provisions of Proposition 35 here at issue had generated 15 comments on the website, many of them by registrants expressing confusion about what they will be required to do. For example, one commenter ("MM") writes "My question is . . . Internet Identifier, I'm confused. I know that your AOL, YAHOO or GMAIL account information would have to be provided, but what about your Directv account? your car insurance account? Your Macy's log on? We all have "internet identifiers", "username" and they are not necessarily the same as your email . . . does it include your work email? I tired [sic] to decipher some of the Prop but got lost in the mumbo-jumbo of internet identifiers and whether it's at a library or work or home."

15. Another commenter on the California Reform website asks, "What about posting on this website? You can post under a new name all day long, if you so please. Is every time you write something under a user name (just because you do not register per se that does not mean you are not posting under that name) cause to provide that name? What if you stop using it?"

16. The comments sections of its website site further California Reform's interests in several ways. First, they allow registrants and others to express matters of fact and opinion about an original article. Second, they allow registrants and others to ask questions about the organization and about legal and policy matters, which are often answered by staff or by other commenters. Third, and related to both of these other interests, allowing comments encourages membership by providing a safe and welcoming forum for registrants and others to speak and ask questions about issues relating to persons convicted or accused of sex offenses.

17. Almost all of these comments, aside from those submitted by staff, are submitted using pseudonyms. Reform California recognizes that its members face social ostracism, the risk of violence, and other adverse consequences because they are registrants, and thus exists the importance of allowing them to participate anonymously. Therefore, its meetings are open to registrants, family members, and supporters but closed to media and government officials. And the website allows commenters to remain anonymous by using pseudonyms.

18. The challenged laws will invade this anonymity because registrants who leave comments on the website generate what is clearly within Proposition 35's definition of

Internet identifier: to leave a comment, a person must enter a screen name (which may be a pseudonym) and email address. The screen name is displayed with the comment. This loss of anonymity will make it less likely that registrants will express themselves on the website, both because some of them may not want the government to be able to connect them to specific posts and because providing the police with the screen names that they use to post comments will reveal their association with California Reform and that they participate in discussions on the website. The loss of anonymity will also impair California Reform's mission by interfering with its ability to provide a safe and welcoming forum in which registrants and others can participate in discussions about issues affecting sex offenders, without fear of adverse consequence.

19. Members of California Reform would have standing to pursue this lawsuit in their own right because they are registrants subject to the requirements of the challenged laws. This lawsuit is germane to the purpose of California Reform because the challenged laws violate the rights of its members, and its mission is to protect those rights. Participation of California Reform's individual members in this litigation is unnecessary because Plaintiffs do not seek damages.

**Defendants**

20. All Defendants are sued in their official capacities only.

21. Defendant Kamala D. Harris is the Attorney General of the State of California. Under Article 5, Section 13 of the California Constitution, she is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." This provision grants her "direct supervision over every district attorney and sheriff and over such other law enforcement officers as may be designated by law." *Id.*; *see* Ca. Gov't Code §§ 12524, 12550, 12560. She "has charge, as attorney, of all legal matters in which the State is interested." § 12511.

22. As Attorney General, Defendant Harris also supervises the operations of the California Department of Justice. *See* Cal. Gov't. Code § 12510. The California Department of Justice is responsible for implementing many of California's registration requirements, including the creation and maintenance of the database itself (§§ 290.012(d), 290.022, 290.09(b)(2), 290.47),

creation and maintenance of the publicly accessible website that contains information about certain registrants (§ 290.46), creation of registration forms that specify what information registrants must provide (§ 290.012(a)), and coordination of registration information for registrants who move from one jurisdiction to another (§ 290.013). The new law specifically requires that local law enforcement make the information they collect about registrants' Internet use available to the Department. § 290.014(b).

23. Therefore, all California law enforcement personnel who collect information relating to registrants' Internet use under §§ 290.014 and 290.015 do so as agents of and in active participation with Defendant Harris.

24. Defendant City of Alameda is a municipal corporation organized as a charter city under the laws of the State of California. The Alameda Police Department is a department of the City of Alameda. *See* Alameda Municipal Code § 2-30.1. Because he resides in the City of Alameda, Plaintiff Doe is required to provide a list of his Internet identifiers and Internet service providers to the Alameda Police Department immediately after Proposition 35 goes into effect, within 24 hours of adding or changing an Internet identifier or changing his account with an Internet service provider, and every year within 5 days of his birthday, under Penal Code §§ 290.014 and 290.015.

## CLASS ACTION ALLEGATIONS

### Plaintiff Class

25. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) or, alternatively, Fed. R. Civ. P. 23(b)(1), on their own behalf and on behalf of all other persons who are required to register under California Penal Code § 290, including those whose duty to register arises after the class has been certified (the "Plaintiff Class"). All such persons are subject to the law here at issue.

26. The class is so numerous that joinder is impracticable: according to the website of the California Department of Justice, the Plaintiff Class includes more than 73,000 people who are currently living in the community, a figure that does not include those persons who are incarcerated or have been deported.

27. The claims of Plaintiff Class members share common issues of law, including but not limited to whether the challenged statutes violate the First Amendment because they are overbroad; whether the challenged statutes violate the First Amendment and Due Process Clause because they are vague; and whether they violate the Equal Protection Clause of the Fourteenth Amendment.

28. The claims of Plaintiff Class members share common issues of fact, including but not limited to whether these new statutes will be effective at addressing the problem that they are meant to address; what the Department of Justice intends to do with the information it is collecting; and how the state plans to implement the new laws.

29. The claims or defenses of the named Plaintiffs are typical of the claims of members of the Plaintiff Class, particularly because this is a facial challenge to the statutes.

30. The named Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class. The named Plaintiffs have no interest that is now or may be potentially antagonistic to the interests of the class. The attorneys representing the Plaintiffs include experienced civil rights attorneys and are considered able practitioners in federal constitutional litigation. These attorneys should be appointed as class counsel.

31. Defendants have threatened to act and will act on grounds generally applicable to the Plaintiff Class, thereby making final injunctive and declaratory relief appropriate to the class as a whole. The Plaintiff Class may therefore be properly certified pursuant to Fed. R. Civ. P. 23(b)(2).

32. Prosecution of separate actions by individual members of the Plaintiff Class would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for individual members of the Plaintiff Class. The Plaintiff Class may therefore be properly certified, alternatively, under Fed. R. Civ. P. 23(b)(1).

## THE MATTERS IN CONTROVERSY

33. In California, every person who has been convicted of a variety of offenses since July 1, 1944, must register as a sex offender for the rest of his or her life. § 290(b). The requirement applies to persons convicted of a number of listed crimes as well as to persons who

committed non-registerable offenses "as a result of sexual compulsion or for the purposes of sexual gratification." §§ 290(c), 290.006. Registerable offenses include misdemeanor indecent exposure, and California appellate courts have upheld convictions and the registration requirement for such offenses based on nude erotic dancing on a stage at a bar, exposing oneself during an incident of road rage, and exposing oneself to an undercover officer who the defendant thought was interested in engaging in sexual activity.

34. Because California's registration statute is so broad, was enacted so long ago, and because it, unlike most states, imposes a lifetime requirement for all offenders, there are currently more than 73,000 people required to register in California, not including persons who are in custody or who have been deported. This is so even though California does, in other contexts, distinguish between sex offenders who pose a high risk to the public and those who do not, using tools such as the Static-99 instrument that have been developed for just this purpose. *See* §§ 290.04-290.07, 1203e, 1203f, 3008.

35. Prior to the adoption of the challenged laws, California's registration law specifically required that registrants provide local law enforcement with their address, employer, and license plate numbers. § 290.015(a). Registrants must provide this information within 5 working days of changing their residence address and annually within 5 days of their birthday. §§ 290.012, 290.013.

36. The specific statutes here at issue were adopted as part of a voter initiative, Proposition 35, on November 6, 2012, and went into effect the following day pursuant to Article II § 10(a) of the California Constitution. Although the bulk of this initiative focuses on issues relating to what it describes as human trafficking, the challenged sections apply to all registrants.

37. Proposition 35 amends § 290.015(a) so that registrants must provide the following additional information whenever they register or re-register: "A list of any and all Internet identifiers established or used by the person" and "[a] list of any and all Internet service providers used by the person." § 290.015(a)(4), (5).

38. The initiative defines these terms as follows:
"Internet service provider" means a business, organization, or other entity providing

a computer and communications facility directly to consumers through which a person may obtain access to the Internet. An Internet service provider does not include a business, organization, or other entity that provides only telecommunications services, cable services, or video services, or any system operated or services offered by a library or educational institution.

"Internet identifier" means an electronic mail address, user name, screen name, or similar identifier used for the purpose of Internet forum discussions, Internet chat room discussions, instant messaging, social networking, or similar Internet communication. § 290.024(a), (b).

39. The initiative requires that registrants provide this newly required information "immediately" after the law becomes effective and also that they advise the police within 24 hours of changes:

If any person who is required to register pursuant to the Act adds or changes his or her account with an Internet service provider or adds or changes an Internet identifier, the person shall send written notice of the addition or change to the law enforcement agency or agencies with which he or she is currently registered within 24 hours. The law enforcement agency or agencies shall make this information available to the Department of Justice. Each person to whom this subdivision applies at the time this subdivision becomes effective shall immediately provide the information required by this subdivision. § 290.014(b).

40. As with the other registration requirements, a violation of any of these requirements is a crime. If the person is required to register as a result of a prior misdemeanor conviction and has no prior convictions for registration violations, a violation is a misdemeanor, punishable by no less than 90 days and no more than 1 year in jail; otherwise, it is a felony, punishable by no less than 90 days in jail and up to 3 years in prison, a sentence that may be dramatically increased if the registrant has prior felony convictions. § 290.018(a)-(c).

41. These new reporting requirements burden speech in several ways. First, the requirement that registrants provide new Internet identifiers or Internet service provider accounts to the government within 24 hours burdens their ability to engage in all manner of online speech, as does the requirement that they provide a yearly list of all Internet identifiers or Internet service providers that they use.

42. In addition, requiring registrants to provide this information infringes upon their right to engage in anonymous online speech. Not only does it require them to identify themselves to the government, but, because there are inadequate limits on what the government can disclose, it may mean that information about their lawful but anonymous online speech

activities will be released to the public. A 2009 survey of California law enforcement agencies found that 39% had "proactively" provided information about registrants to the public, apparently without any evidence that the registrant had been involved in any sort of criminal activity; nothing in the new law prevents them from doing the same with the information about registrants' online speech that registrants must now provide.

43. Scholarly research suggests that requiring all registrants to provide their Internet identifiers and Internet service providers is not an effective way to accomplish the government's stated goal of protecting children.

44. First, as the California Department of Justice reports, the vast majority of sex crimes against children are committed by family members or acquaintances: 90% of child victims know their offender, with almost half of the offenders being a family member. Of sexual assaults against people aged 12 years and up, approximately 80% of the victims know the offender.

45. Second, the best available data show that, as measured by arrests, online offenses constitute only about 1% of sex crimes committed against children and youth. And only 4% of those arrested for online sex crimes against youth victims in 2006 were registered sex offenders. Few of these crimes involve violence, abduction, or stalking, and few involved young children. A rapidly growing proportion of those arrested for such crimes are themselves aged 25 years or under.

46. Third, because the government can, as it does in other contexts, distinguish between registrants who pose a high risk of reoffending from those who pose a much lower risk, requiring all registrants to comply with this new law is needlessly overbroad. Most sex offenders do not reoffend, and the government can use tools such as the Static-99 test to determine which registrants pose a high risk of reoffending and which do not. A 2009 study by the state showed that the majority of felony sex offenders sentenced to prison and released on parole in California after 2005 were classified as posing a low or moderate-low risk of reoffending under Static-99. In addition, the longer ex-offenders remain offense-free in the community, the less likely they are to reoffend sexually. On average, the likelihood of reoffending drops by 50% every 5 years that an

offender remains in the community without a new arrest for a sex offense. Eventually, persons convicted of sex offenses are *less likely* to reoffend than a non–sexual offender is to commit an "out of the blue" sexual offence. For example, offenders who are classified as "low risk" pose no more risk of recidivism than do individuals who have never been arrested for a sex-related offense but have been arrested for some other crimes. After 10 to 14 years in the community without committing a sex offense, medium-risk offenders pose no more risk of recidivism than do individuals who have never been arrested for sex-related offenses but have been arrested for other crimes. The same is true for high-risk offenders after 17 years without a new arrest for a sex-related offense.

47. Thus, rather than imposing these requirements on all registrants, the government could have a more narrowly tailored requirement that excludes registrants whose Static-99 scores, offense of conviction, and post-release conduct show that they do not pose a high risk of using the Internet to commit a new crime.

**Need for Injunctive and Declaratory Relief**

48. Plaintiffs re-allege and incorporate here the allegations in the above paragraphs, as though fully set forth herein.

49. There exists an actual, present, and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct described herein. Plaintiffs contend that Defendants violate Plaintiffs' rights under the Constitution and laws of the United States, because the challenged provisions are unconstitutional on their face and as applied to the individual Plaintiffs, the members of the organizational Plaintiff, and to others in the Plaintiff Class. On information and belief, Defendants deny that their conduct violates Plaintiffs' rights under the Constitution and laws of the United States. Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions and seek a judicial declaration that Defendants' conduct deprives Plaintiffs of their rights under the Constitution and laws of the United States.

50. This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate pursuant to 28 U.S.C. §§ 2201 and 2202, so that the parties may know the legal obligations that govern their present and future conduct.

51. In the absence of court-ordered relief, Plaintiffs will suffer imminent, immediate, and ongoing irreparable harm in the form of loss of anonymity, and a chilling of their free speech and associational rights. No future award of damages can remedy the loss of these constitutional rights. Both the public interest and equity favor granting an injunction to allow Plaintiffs to exercise their constitutional free speech and associational rights. Injunctive relief is therefore necessary and appropriate.

## COUNT I: VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

52. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

53. The provisions of §§ 290.015(a)(4), (5) and § 290.014(b) that require registrants to provide their Internet identifiers and Internet service providers to the government violate the First Amendment rights to free speech and association because the provisions are vague, overbroad, burden speech without being appropriately tailored to the government's stated goals, and require the compelled disclosure of individuals with whom registrants associate.

54. The provisions of §§ 290.015(a)(4), (5) and § 290.014(b) that require registrants to provide their Internet identifiers and Internet service providers to the government violate the First Amendment because they apply to some persons but not others without sufficient justification.

55. Defendants, acting under color of state law, have threatened to and will enforce and implement the challenged laws against the individual Plaintiffs, members of the organizational Plaintiff, and members of the Plaintiff Class, in violation of their First Amendment rights.

56. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm, which will continue absent injunctive relief.

**COUNT II: VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

57. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

58. The definitions of "Internet identifier" and "Internet service providers" in §§ 290.024(a), (b) are impermissibly vague in that persons of common intelligence must guess at their meaning; this problem is magnified because a registrant who reads the provisions too narrowly is subject to criminal prosecution and punishment, and one who reads them too broadly suffers a greater infringement of his First Amendment rights than the statutes require. These statutes therefore violate due process.

59. Defendants, acting under color of state law, have threatened to and will enforce and implement the challenged laws against the individual Plaintiffs, members of the organizational Plaintiff, and members of the Plaintiff Class, in violation of their due process rights. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm, which will continue absent injunctive relief.

**COUNT III: VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

60. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

61. The provisions of §§ 290.015(a)(4), (5) and § 290.014(b) that require registrants to provide their Internet identifiers and Internet service providers to the government violate equal protection because they apply to some persons but not others without sufficient justification.

62. Defendants, acting under color of state law, have threatened to and will enforce and implement the challenged laws against the individual Plaintiffs, members of the

organizational Plaintiff, and members of the Plaintiff Class, in violation of their equal protection rights.

63. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm, which will continue absent injunctive relief.

**COUNT IV: EX POST FACTO LAW**

**UNDER ARTICLE II § 10 cl. 1 OF THE UNITED STATES**

**CONSTITUTION (42 U.S.C. § 1983)**

64. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

65. The provisions of §§ 290.015(a)(4), (5) and § 290.014(b) that require registrants to provide their Internet identifiers and Internet service providers to the government violate the Ex Post Facto Clause because they impose additional punishment for crimes committed before they were enacted.

66. Defendants, acting under color of state law, have threatened to and will enforce and implement the challenged laws against the individual Plaintiffs, members of the organizational Plaintiff, and members of the Plaintiff Class, in violation of their rights under the Ex Post Facto Clause.

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm, which will continue absent injunctive relief.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs, on behalf of themselves and the Plaintiff Class, seek the following relief:

1. A declaration that California Penal Code §§ 290.015(a)(4), (5), § 290.014(b), and §§ 290.024(a), (b) are unconstitutional, facially and as applied.

2. A temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants, including all of Defendant Harris's officers, agents, servants, employees, attorneys, and other persons in active concert or participation with Defendant Harris, including but not limited to every California District Attorney, City Attorney, or peace officer,

from enforcing §§ 290.015(a)(4), (5), § 290.014(b) and §§ 290.024(a), (b) or from otherwise requiring registrants to provide their Internet identifiers or Internet service providers to the government.

3. Costs and attorney's fees incurred in this action pursuant to 42 U.S.C. § 1988 and other applicable authority.

4. Such other and further relief as may be just and proper.

DATED: November 7, 2012

Respectfully submitted,

By: [signature]

Michael T. Risher
Linda Lye
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

Hanni Fakhoury
Lee Tien
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiffs
JOHN DOE, *et al.*, on behalf of themselves and others similarly situated