MICHAEL T. RISHER (SBN 191627)
mrisher@aclunc.org
LINDA LYE (SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

HANNI FAKHOURY (SBN 252629)
hanni@eff.org
LEE TIEN (SBN 148216)
tien@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Plaintiffs
JOHN DOE, et al.
on behalf of themselves and others similarly
situated

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

C 12 5713

| | |
|---|---|
| JOHN DOE, et al., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KAMALA D. HARRIS, et al.,<br><br>Defendants. | Civil Case No. _____<br><br>**DECLARATION OF R. KARL HANSON** |

I, R. Karl Hanson, declare as follows:

1.  I am a Senior Research Scientist at Public Safety Canada.  Throughout my career, I have studied recidivism, with a focus on sex offenders.  I discuss in this declaration key findings and conclusions of research scientists, including myself, regarding recidivism rates of the general offender population and sex offenders in particular.  The information in this declaration is based upon my personal knowledge and on sources of the type which researchers in my field would rely upon in their work.  If called upon to testify, I could and would competently testify thereto.

### Summary of Declaration

2.  My research on recidivism shows the following:

    a.  Recidivism rates are not uniform across all sex offenders.  Risk of re-offending varies based on well-known factors and can be reliably predicted by widely used risk assessment tools such as the Static-99 and Static-99R, which are used to classify offenders into various risk levels.  *See* ¶¶ 14-19.

    b.  Once convicted, most sexual offenders are never re-convicted of another sexual offence.  *See* ¶ 19.

    c.  First-time sexual offenders are significantly less likely to sexually re-offend than are those with previous sexual convictions.  *See* ¶ 19.

    d.  Contrary to the popular notion that sexual offenders remain at risk of re-offending through their lifespan, the longer offenders remain offence-free in the community, the less likely they are to re-offend sexually.  Eventually, they are less likely to re-offend than a non-sexual offender is to commit an "out of the blue" sexual offence.  *See* ¶¶ 19-41.

        i.  Offenders whose are classified as low-risk by Static-99R pose no more risk of recidivism than do     individuals who have never been arrested for a sex-related offense but have been arrested for some other crime .  *See* ¶¶ 26-30, 36.

1

    ii.   After 10-14 years in the community without committing a sex offense, medium-risk offenders pose no more risk of recidivism than individuals who have never been arrested for a sex-related offense but have been arrested for some other crime. *See* ¶¶ 30, 34.

    iii.   After 17 years without a new arrest for a sex-related offense, high risk offenders pose no more risk of committing a new sex offense than do individuals who have never been arrested for a sex-related offense but have been arrested for some other crime. *See* ¶¶ 30, 35.

**3.** Based on my research, my colleagues and I recommend that rather than considering all sexual offenders as continuous, lifelong threats, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk sexual offenders are better re-directed toward the management of high-risk sexual offenders, crime prevention, and victim services. *See* ¶¶ 39-42.

**Background and Qualifications**

**4.** I am a Senior Research Scientist at Public Safety Canada. Public Safety Canada is a federal department that was created in 2003 to ensure coordination across all federal departments and agencies responsible for national security and the safety of Canadians. The Department's responsibilities include emergency management, policy development and advice to the Minister of Public Safety on matters of national security, implementing Canada's National Crime Prevention Strategy, developing national policies for new and evolving crime and border issues, and developing legislation and policies governing corrections.

**5.** As a Senior Research Scientist, I conduct and supervise research on corrections, with a particular focus on sexual offenders and family violence. I have held this position since 2009. From 1991-2009, I served as Senior Research Officer for the Solicitor General of Canada and Public Safety Canada. From 1986 to 1991 I was a psychologist in private practice, specializing in the assessment and short-term treatment of offenders on probation and parole. During that time I was also Course Director for psychology courses

2

as York University (Personality, Abnormal Psychology, Research) and Trent University (Abnormal Psychology). I earned my Ph.D. in Clinical Psychology from the University of Waterloo in 1986, and my B.A. with honors in Psychology from Simon Fraser University in 1981. I am currently the Chair of the Research Committee of the Association for the Treatment of Sexual Abusers, an appointment that began in 2009 and ends in December, 2012; since 1996 I have been the Secretary/Treasurer for the Criminal Justice Section of the Canadian Psychological Association; since 2000 I have served on the Scientific Advisor Committee International Association for the Treatment of Sexual Offenders. I am a member of the International Association for Correctional and Forensic Psychology, and Ontario College of Psychology. I serve on a variety of editorial boards, scientific committees and working groups, including serving as the advisor to the DSM-V Sexual Disorders Workgroup of the American Psychiatric Association (2009-present). From 1997-2011 I provided training and consulting for the California Department of Mental Health about civil- commitment evaluation and Static-99 scoring and interpretation.

6.  Throughout my career I have studied recidivism, particularly recidivism among sex offenders, and have written numerous articles on this topic. A true and correct copy of my CV is attached to this declaration as Exhibit 1.

## Recidivism in the General Offender Population Declines the Longer an Ex-Offender Remains Arrest or Conviction Free

7.  Research has long shown that the longer an ex-offender remains free of arrests or convictions the lower the chance he will reoffend. In fact, most detected recidivism occurs within three years of a previous arrest and almost always within five years.

8.  In an effort to try to determine whether it is possible to determine empirically when it is no longer necessary for an employer to be concerned about a criminal offense in a prospective employee's past, the United States Department of Justice's National Institute of Justice funded a study to actuarially estimate a point in time when an individual with a criminal record is at no greater risk of committing another crime than other individuals of the same age.

9.  The study's goal was to determine empirically at what point in time the risk of recidivism was no greater than the risk for two comparison populations. Their analysis was based on a statistical concept called the "hazard rate." In this context, the hazard rate is the probability, over time, that someone who has stayed arrest-free will be arrested. For a person who has been arrested in the past, the hazard rate declines the longer he stays free of arrests.

10. The researchers, noted criminologist Alfred Blumstein and his then-doctoral student Kiminori Nakamura, obtained the criminal history records of 88,000 individuals who were arrested for the first time in New York State in 1980, and then determined whether they had been arrested for any other crime(s) during the ensuing 25 years or if they had stayed arrest-free.

11. The study showed that the hazard rates for people who committed crimes such as burglary, robbery, and aggravated assault eventually dropped below the hazard rate for other individuals of the same age in the general population. For example, for 18-year-olds who were arrested for a first offense robbery, the hazard rate declined to the same arrest rate for the general population of same-aged individuals at age 25.7, or 7.7 years after the robbery arrest. After that point, the probability that individuals would commit another crime was less than the probability of other 26-year-olds in the general population. The hazard rates of people who committed burglary at age 18 declined to the same as the general population somewhat earlier: 3.8 years post-arrest at age 21.8. For aggravated assault, the hazard rates of the study group dropped below that of the general population of same-aged individuals 4.3 years post-arrest or at age 22.3.

12. Blumstein and Nakamura also looked at the hazard rates for people whose first arrest had occurred at other ages and found that the younger an offender was when he committed robbery, the longer he had to stay arrest-free to reach the same arrest rate as people his same age in the general population.

13. The results of their study are published in Blumstein, A., and K. Nakamura, "Redemption in the Presence of Widespread Criminal Background Checks," Criminology 47 (2) (May

4

2009), and summarized in an article of the same name in the National Institute of Justice Journal, No. 263 10-17, available at https://www.ncjrs.gov/pdffiles1/nij/226872.pdf .

**Risk Assessment Tools Exist to Predict the Risk of Reoffending by Sex Offenders**

14. Although it has long been suspected that recidivism rates are not uniform across all sex offenders, it is only in the last few decades that researchers have developed tools to assess the risk that different categories of sex offenders will recidivate. In 1999, I, along with my colleague David Thornton, created a 10-item actuarial scale that assesses the recidivism risk of adult male sex offenders, known as the Static-99. We created the Static-99 as a more-accurate replacement for earlier assessment tools. The 10 items cover the nature of sex-related offense or offenses that led to the most recent arrest (the "index offense"), and also the offender's demographics (age at release, relationship history), sexual criminal history (prior sexual offences, any male victims, any unrelated victims, any stranger victims, any non-contact sexual offences), and general criminal history (prior sentencing dates, non-sexual violence committed along with the index offense, prior non-sexual violence). The Static-99 is intended to be used with adult male offenders who have committed either a contact or non-contact sexual offense and have reached the age of 18 prior to release to the community.

15. The Static-99 results in a score that can range from 0 up to 12. Depending on their score, offenders are classified as having low (score of 0-1), moderate-low (score of 2-3), moderate-high (score of 4-5), or high risk (score of 6+) of reoffending. The coding form for the Static-99 can be found at http://www.static99.org/pdfdocs/static-99-coding-rules_e71.pdf, a true and correct copy of which is attached to this declaration as Exhibit 2.

16. The Static-99 is based on static (unchanging) risk factors that estimate the likelihood of sexual re-offending. More recently, researchers and others have begun using the Static-99R. The items and scoring rules are identical to Static-99 with one exception: Static-99R takes into account the well-established principle that rates of almost all crimes decrease as people age. Most studies have found that older sexual offenders are lower risk to reoffend than younger sexual offenders (Barbaree & Blanchard, 2008; Hanson,

2002, 2006) (a list of complete citations for the sources cited is attached). Research has found that the original Static-99 did not fully account for age at release and that the new age weighting had greater predictive accuracy than the original version (Helmus, Thornton, et al., 2012).

17. , Consequently, the Static-99R adjusts the offender's score as follows, based on his age when he was released from custody for the index offense: It increases the score by 1 point if the offender was less than 35 years old at release; it makes no adjustment if the offender was between 35 and 40 at release; it lowers it by 1 point if he was aged 40 to 60; and it lowers it by 3 points if he was age 60 or older. This means that Static-99R scores can range from -3 up to 12. The scores that place offenders into the various risk classification categories are the same as in the Static-99, except that a low score is now defined to include -3 through 1. The coding form for the Static-99R can be found at http://www.static99.org/pdfdocs/static-99rcodingform.pdf, a true and correct copy of which is attached to this declaration as Exhibit 3.

18. The Static-99 and the Static-99R are the most widely used sex offender risk assessment instruments in the world, and are extensively used in the United States, Canada, and other nations. As noted above, from 1997-2011, I provided training and consulting for the California Department of Mental Health about Static-99/99R scoring and interpretation, and it is my understanding that California uses them to assess every eligible sex-offender prior to release on parole, to assess every eligible sex offender pre-sentencing and on a probation caseload, and prior to release of an eligible sex offender from a DMH institution. *See* http://www.saratso.org/risklntsru.htm. I am currently collaborating with the SARATSO (State Authorized Risk Assessment Tool for Sex Offenders) Committee, a committee created by the California legislature to consider the selection of risk assessment tools for California, and the California Department of Corrections and Rehabilitation on a research study examining the validity of Static-99. Additional information about these tools can be found at http://www.static99.org/.

6

## Recidivism Rates among Sex Offenders

19. I have conducted studies similar to that conducted by Blumstein and Nakamura of the general offender population in order to determine recidivism rates for sex offenders and to better understand what factors affect those rates. In 2003-2004, I, working with other researchers, analyzed the data from 10 existing follow-up studies of adult male sexual offenders (combined sample of 4,724). The analysis indicated that most sexual offenders do not re-offend sexually, that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions, and that offenders over the age of 50 are less likely to re-offend than are younger offenders. In addition, the longer offenders remained offence-free in the community the less likely they are to re-offend sexually.

20. More specifically, the study found that after 15 years of living in the community, 73% of sexual offenders had not been charged with, or convicted of, another sexual offence. The sample was sufficiently large that very strong contradictory evidence would be necessary to substantially change these recidivism estimates, particularly since other studies have found similar results.

21. Not all sexual offenders were equally likely to reoffend. By using simple, easily observed characteristics, it was possible to differentiate between offenders whose five year recidivism rate was 5% from those whose recidivism rate was 25%. The factors associated with increased risk were the following: a) male victims, b) prior sexual offences, and c) young age.

22. The study also showed that the rate of reoffending decreases the longer offenders have been offence-free. The five year recidivism rate for new releases of 14% decreased to 4% for individuals who have been sex-offence-free for 15 years. The observed rates underestimate the actual rates because not all sexual offences are detected; nevertheless, the findings contradicted the popular notion that all sexual offender remain at risk throughout their lifespan.

23. It is important to understand that most of the offenders in this study had not received effective treatment. Research has found that contemporary cognitive-behavioral treatment

is associated with reductions in sexual recidivism rates from 17% to 10% after approximately 5 years of follow-up (Hanson et al., 2002).

24. The study, including its methodology, is discussed in Andrew J. R. Harris and R. Karl Hanson, Sex Offender Recidivism: A Simple Question (Public Safety and Emergency Preparedness Canada 2004), available at http://www.publicsafety.gc.ca/res/cor/rep/2004-03-se-off-eng.aspx.

25. We concluded that rather than considering all sexual offenders as continuous, lifelong threats, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk sexual offenders are better re-directed toward the management of high-risk sexual offenders, crime prevention, and victim services.

26. I, along with three other researchers, recently conducted a similar study to examine the extent to which sexual offenders present an enduring risk for sexual recidivism over a 20 year follow-up period. This updated study is the topic of a paper that we have recently submitted to a peer-reviewed journal for publication; as well, the results of this study were presented by myself and Dr. Andrew Harris at the 2012 Association for the Treatment of Sexual Abusers 32nd Annual Research and Treatment Conference, held in October 2012. The study used the same methodology as the 2003-04 study (life table survival analysis), but differed from the earlier study in two significant ways: the sample size was significantly larger (n=7,740), and the study grouped offenders according to their Static-99R scores into low- (scores below 0) medium- (scores of 0-4) and high- (5 and above) risk categories (we used three rather than the usual four categories in order to maximize sample size for each category and increase the stability of the results). (See Hanson et al., 2012).

27. This study confirmed that sexual offenders' risk of committing sexual crimes decreases the longer they have been sex offence-free in the community. On average, their recidivism risk dropped by 50% each five years that they remained offense-free in the community. This pattern was particularly evident for high risk sexual offenders, whose yearly recidivism rates declined from approximately 7% during the first calendar year, to

8

less than 1% per year when they have been offence-free for 10 years or more. Thus, like "regular" offenders, sex offenders are less likely to re-offend the longer they remain offence-free in the community.

28. We also determined that, just as Blumstein and Nakamura established with respect to other types of offenders, sex-offenders who remain free of arrests for a sex offense will eventually become less likely to reoffend sexually than a non-sexual offender is to commit an "out of the blue" sexual offence.

29. As a preliminary step, we had to define the level of risk at which sexual offenders should be treated as non-sexual offenders. Unfortunately, there are very limited data as to the rates of sexual offending among the general male population. One study from Great Britain has found that approximately 2% of males are convicted for a sexual offence by age 40 (Marshall, 1997). Another has determined that among non-forensic psychiatric admissions, the proportion with a history of sexual violence is 3% to 5% (Hirdes, 2012). Because these data are not entirely satisfactory, we chose a different reference group: persons who have been arrested but have no recorded history of sexual offending. Among such non-sexual offenders, the observed sexual offense rates are 1% to 3% (Duwe, 2012; Hanson et al., 1995; Langan et al., 2003; Sample & Bray, 2003). For this paper we chose a threshold of < 3% sexual recidivism rates after 5 years as a comparison baseline.

30. Using this threshold, we found that immediately upon release, low-risk offenders pose a smaller risk of recidivism (2.2% five-year risk) than does this baseline group of individuals who have never been arrested for a sex offense. After 10 years in the community without committing a sex offense, medium-risk offenders also pose a risk (2.4% five-year risk) that is below this baseline. Although their recidivism rates declined substantially when they were 10 years offence-free, the five year recidivism rate of the initially high risk offenders (4.2%) was still higher than the 3% expected rate for nonsexual offenders.

31. As part of this research project, presented at the 2012 Research and Treatment Conference of the Association for the Treatment of Sexual Abusers, we also used another

9

method of estimating the redemption period for sexual offenders. The redemption period is the time at which their expected rates of recidivism are below some pre-determined threshold. The second method involved estimating the probability of sexual recidivism during 6-month periods, from the time of release to more than 20 years in the community. These discrete-time hazard rates were then modeled using logistic regression. Statistical modeling minimizes random noise in the data allowing the patterns to be observed more clearly. By statistically modeling the hazard rates, we were able to make more precise estimates of the recidivism rates than we could using the statistical procedures (life-table survival analyses) reported in our earlier analyses.

32. Statistical modeling of discrete-time hazard rates is a well-established method for estimating changes in hazard rates over time (Singer & Willett, 2003). These statistical methods (logistic regression modeling of discrete-time hazard rates) have been used by other researchers to specifically examine time-to-redemption for general (non-sexual) offenders (Bushway, Nieubeerta & Blokland, 2011). Logistic regression is the standard statistical method for estimating the value of a binary dependent variable (a yes-no question) based on a set of continuous independent variables. In our case, the binary variable was recidivism (charge for a sexual crime) during a six-month period, and the predictor variables were time sex-offence free and Static-99R scores. Logistic regression is discussed in most advanced texts on statistics; a standard reference is Alan Agresti, AN INTRODUCTION TO CATEGORICAL DATA ANALYSIS (John Wiley and Sons 1996).

33. I compared the expected risk of sexual recidivism that individuals in the various risk categories would pose after they have been living in the community without a subsequent arrest for a sex-related crime to a baseline risk posed by any person who has suffered at least one arrest for any type of crime. By averaging the results of five studies that were conducted on this question between 1993 and 2008, we calculated the probability that a person who has suffered any arrest in his lifetime will commit a sex offense during any 6-month period as approximately 0.2% (rounded from 0.19%). This is a somewhat lower baseline than the 3%-over-5-years that we used in our recently submitted paper, discussed above; this means that the results discussed below are more conservative than those discussed above.

10

34. This analysis, which I presented at the 2012 ATSA conference, showed that after 14 years without a new arrest for a sex-related offense, medium-risk sex offenders pose no more risk of committing a new sex offense than do these baseline individuals who have never been arrested for a sex-related offense.

35. It also showed that after 17 years without a new arrest for a sex-related offense, high-risk sex offenders (top 16% of routine samples) pose no more risk of committing a new sex offense than do these baseline individuals who have never been arrested for a sex-related offense.

36. For the low risk sexual offenders (bottom 16% of routine samples), there was no significant change in their risk levels over time, as their risk was consistently low. Less than 0.2% (0.187%) of the low risk sexual offenders would be expected to be charged with a sexual offence during any discrete 6-month time period. For these individuals, their risk of a new sexual offence was already lower than the .0020 baseline at the time they were released from custody.

37. A true and correct copy of a graph that I presented at the conference, showing the recidivism rates over time for the three categories, along with the baseline, is attached to this declaration as Exhibit 4.

38. I, along with several of my colleagues, am currently preparing a paper for publication in a peer-reviewed journal that will discuss these results. I do not expect that the basic results that I discuss in this declaration will change as a result of that process.

39. I do, however, expect that when our analysis is complete it will allow us to calculate the risks posed by sex offenders who have remained completely free of *any* arrest following their release from custody (the above calculations only examine whether there has been a new arrest for a sex offense). Based on prior research indicating that committing any sort of crime increases the statistical likelihood that one will commit a sex crime, I expect we will find that sex offenders who have remained completely arrest free since their release will be significantly less likely to commit new sex offenses than the above data suggests, and that they will drop below the baseline risk earlier than is indicated above for people

who have remained free of arrests for sex crimes but may have been arrested for other offenses.

40. Finally, it is important to understand that there are post-release factors other than the passage of time without a new arrest that can help predict whether an offender is likely to reoffend. As mentioned above, modern treatment methods can have a significant effect in reducing recidivism; furthermore, one study involving interviews with sexual recidivists found that most of the treatment failures had never seriously intended to stop offending or change the right-risk lifestyle in which their offending was embedded. Sexual offenders with a credible release plan are lower risk than offenders without, and cooperation with supervision is a well-established factor that reduces risk. Consequently, it is quite likely that by monitoring these factors, by measuring indicators of commitment to treatment and other prosocial goals, and by monitoring involvement in non-sexual crime, evaluators could have an increased capacity to discriminate those who will recidivate from those who will not.

41. Thus, as my colleagues and I concluded in our 2004 paper, blanket policies that treat all sexual offenders as "high risk" waste resources by over-supervising lower risk offenders and risk diverting resources from the truly high-risk offenders who could benefit from increased supervision and human service. Research has even suggested that offenders may actually be made worse by the imposition of higher levels of treatment and supervision than is warranted given their risk level (Lovins, Lowenkamp & Latessa, 2009). Rather than considering all sexual offenders as continuous, lifelong threats, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk sexual offenders are better re-directed toward the management of high-risk sexual offenders, crime prevention, and victim services.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _3_ day of _November_ 2012 in ___Ottawa___, Canada.

_R. K. Hw_ R. Karl Hanson

12

**Sources Cited**

Agresti, A. (1996) *An Introduction to Categorical Data Analysis.* New York: John Wiley and Sons.

Barbaree, H. E., & Blanchard, R. (2008). Sexual deviance over the lifespan: Reductions in deviant sexual behaviour in the aging sex offender. In: D. R. Laws & W. T. O'Donohue (Eds.), *Sexual Deviance: Theory, Assessment, and Treatment* (2nd ed.). New York: Guilford.

Blumstein, A., and Nakamura, K. (2009), Redemption in the presence of widespread criminal background checks, *Criminology, 47*(2); and summarized in an article of the same name in the *National Institute of Justice Journal, 263,* 10-17, available at https://www.ncjrs.gov/pdffiles1/nij/226872.pdf .

Bushway, S. D., Nieubeerta, P., & Blokland, A. (2011). The predictive value of criminal background checks: Do age and criminal history affect time to redemption? *Criminology, 49,* 27-60.

Duwe, G. (2012). Predicting first-time sexual offending among prisoners without a prior sex offense history: The Minnesota Sexual Criminal Offending Risk Estimate (MnSCORE). *Criminal Justice and Behavior, 39,* 1436-1456.

Hanson, R. K. (2002). Recidivism and age: Follow-up data on 4,673 sexual offenders. *Journal of Interpersonal Violence, 17,* 1046-1062.

Hanson, R.K. (2006). Does Static-99 Predict Recidivism Among Older Sexual Offenders? *Sex Abuse.* 18:343-355.

Hanson, R. K., Gordon, A., Harris, A. J. R., Marques, J. K., Murphy, W., Quinsey, V., & Seto, M. (2002). The 2001 ATSA report on the effectiveness of treatment for sexual offenders. Sexual Abuse: A Journal of Research and Treatment, 14 (2),169-194.

Hanson, R.K., Lloyd, C.D., Helmus, L. & Thornton, D. (2012): Developing Non-Arbitrary Metrics for Risk Communication: Percentile Ranks for the Static-99/R and Static-2002/R Sexual Offender Risk Tools, International Journal of Forensic Mental Health, 11:1, 9-23.

Hanson, R. K., Scott, H., & Steffy, R. A. (1995). A comparison of child molesters and non-sexual criminals: Risk predictors and long-term recidivism. *Journal of Research in Crime and Delinquency, 32(3),* 325-337.

Harris, A.J.R., and Hanson, R.K. (2004). *Sex Offender Recidivism: A Simple Question 2004-03.* Public Safety and Emergency Preparedness Canada. available at http://www.publicsafety.gc.ca/res/cor/rep/2004-03-se-off-eng.aspx.

Helmus, L., Thornton, D., Hanson, R.K., & Babchishin, K.M. (2012). Improving the predictive accuracy of Static-99 and Static-2002 with older sex offenders: Revised age weights. *Sexual Abuse: A Journal of Research and Treatment, 24*(1), 64-101. doi:10.1177/1079063211409951.

Hirdes, J. P. (2012). *Use of the interRAI assessment instruments in forensic mental health settings*. Presentation at the Future of Forensic Care: Solutions Worth Sharing. Utrecht, Netherlands.

Langan, P. A., Schmitt, E. L., & Durose, M. R. (2003). Recidivism of sex offenders released from prison in 1984. Bureau of Justice Statistics NCJ 198281. Washington, DC: U.S. Department of Justice.

Lovins, B., Lowenkamp, C. T., & Latessa, E. J. (2009). Applying the risk principle to sex offenders: Can treatment make some sex offenders worse? *The Prison Journal, 89*, 344-357.

Marshall, P. (1997). *The prevalence of convictions for sexual offending.* (Research Finding No. 55.) London, UK: Home Office Research and Statistics Directorate.

Sample & Bray, 2003: Sample, L. L., & Bray, T. M. (2003). Are sex offenders dangerous? *Criminology and Public Policy, 3,* 59-82. doi:10.1111/j.1745-9133.2003.tb00024.x

Singer, J. D., & Willett, J. B. (2003). *Applied Longitudinal Data Analysis: Modeling Change and Event Occurrence.* Oxford, UK: Oxford University Press.