KAMALA D. HARRIS
Attorney General of California
PETER K. SOUTHWORTH
Supervising Deputy Attorney General
ROBERT D. WILSON
Supervising Deputy Attorney General
State Bar No. 136736
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 327-7870
 Fax: (916) 324-8835
 E-mail: robert.wilson@doj.ca.gov

*Attorneys for Defendant Kamala Harris,
Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JOHN DOE, JACK ROE, AND CALIFORNIA REFORM SEX OFFENDER LAWS,** ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>**KAMALA D. HARRIS, ATTORNEY GENERAL OF CALIFORNIA, AND CITY OF ALAMEDA,**<br><br>Defendants. | Case No. 3:12-cv-05713-TEH<br><br>**OPPOSITION BY DEFENDANT ATTORNEY GENERAL TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         Dec. 17, 2012<br>Time:         10:00 a.m.<br>Judge:        The Honorable Thelton E. Henderson<br>Trial Date:   Not Set<br>Action Filed: November 6, 2012 |

**TABLE OF CONTENTS**

Page

Introduction ........................................................................................................................... 1
Statement of Facts ................................................................................................................. 2
    I.    Sex offender registration process ........................................................................ 2
    II.   The CASE Act's impact on the current registration process ............................... 4
    III.  Security and use of sex offender registrant Internet information ........................ 6
Argument .............................................................................................................................. 8
    I.    Plaintiffs do not meet the heavy burden for issuance of a preliminary injunction enjoining operation of a state statute ................................................. 8
    II.   The CASE Act is facially constitutional under the First Amendment ................ 9
    III.  The CASE Act does not violate the Due Process Clause ................................. 12
    IV.  The CASE Act does not implicate plaintiff's freedom of association ............... 14
Conclusion .......................................................................................................................... 14

i

Attorney General's Opp. To Motion for Prelim. Inj.  (3:12-cv-05713-TEH)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alliance for the Wild Rockies v. Cottrell*
632 F.3d 1127 (9th Cir. 2011) ................................................................................................ 8

*Boyce Motor Lines v. United States*
342 U.S. 337 (1952) .............................................................................................................. 13

*Broadrick v. Oklahoma*
413 U.S. 610 (1973) .............................................................................................................. 11

*Buckley v. American Constitutional Law Foundation, Inc.*
525 U.S. 182 (1999) ................................................................................................................ 9

*Circuit City Stores v. Adams*
532 U.S. 15 (2001) ................................................................................................................ 14

*Craft v. Nat'l Park Serv.*
34 F.3d 918 (9th Cir. 1994) .................................................................................................. 13

*Cupolo v. Bay Area Rapid Transit*
5 F. Supp. 2d 1078 (N.D. Cal. 1997) .................................................................................... 9

*Doe v. Nebraska*
Nos. 8:09CV456,4:10CV3266,4:10CV3005 2012 WL 4923131 (D. Neb. 2012) ........ 1, 11, 12

*Doe v. Shurtleff*
628 F.3d 1217 (10th Cir. 2010) ..................................................................................... passim

*In re Alva*
33 Cal. 4th 254 (2004) ............................................................................................................ 2

*Maryland v. King*
No. 12A48, __ U.S. __, __ S. Ct. __, 2012 WL 3064878 (Roberts, Circuit Justice
2012) ....................................................................................................................................... 9

*Mazurek v. Armstrong*
520 U.S. 968 (1997) ................................................................................................................ 8

*Members of Cty. Council of L.A. v. Taxpayers for Vincent*
466 U.S. 789 (1984) .............................................................................................................. 11

*People v. Aragon*
207 Cal.App.4th 504 (2012) ................................................................................................. 13

ii

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

**TABLE OF AUTHORITIES**
(continued)

**Page**

*People v. Brophy*
    49 Cal.App.2d 15 (1942) ............................................................................................... 9

*People v. Edgar*
    104 Cal.App.4th 210 (2002) ....................................................................................... 13

*United States v. Williams*
    553 U.S. 285 (2008) ............................................................................................ 11, 13

*White v. Baker*
    696 F. Supp.2d 1289 (N.D. Ga. 2010) ....................................................... 1, 11, 12, 14

*Winter v. Natural Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ......................................................................................................... 8

**STATUTES**

42 United States Code
    § 16915a ..................................................................................................................... 13

California Penal Code
    § 290 ............................................................................................................................. 7
    § 290-295. ................................................................................................................ 1, 2
    § 290, subd. (b) ........................................................................................................... 3
    § 290.012 ..................................................................................................................... 4
    § 290.012, subd. (a) ................................................................................................. 3, 4
    § 290.012, subd. (a)(1) ............................................................................................... 4
    § 290.012, subd. (d) .................................................................................................... 4
    § 290.014 ..................................................................................................................... 5
    § 290.014, subd. (a) .................................................................................................... 5
    § 290.014, subd. (b) .................................................................................................... 5
    § 290.015 ..................................................................................................................... 4
    § 290.015, subd. (a) ................................................................................................. 3, 4
    § 290.015, subd. (a)(5) ............................................................................................... 4
    § 290.015, subd. (b) .................................................................................................... 4
    § 290.015, subd (c) ..................................................................................................... 3
    § 290.017, subd. (a) ................................................................................................. 2, 3
    § 290.017, subd. (b) .................................................................................................... 3
    § 290.017, subd. (c) .................................................................................................... 3
    § 290.017, subd. (d) .................................................................................................... 3
    § 290.021 ..................................................................................................................... 6
    § 290.024, subd (a) ............................................................................................... 12, 13
    § 290.024, subd (b) ........................................................................................ 12, 13, 14
    § 290.45 ............................................................................................................ 7, 8, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

§ 290.45, subd. (a)(1) .................................................................................................. 7
§ 290.46 ................................................................................................................... 7, 8
§ 290.5 ........................................................................................................................ 2
§ 14200 .................................................................................................................... 5, 6
§ 14201.1 ................................................................................................................. 5, 6
§ 14202, subd. (b)(3) ............................................................................................... 5, 6

Government Code
  § 6254, subd. (f) ....................................................................................................... 6

**CONSTITUTIONAL PROVISIONS**

U.S Constitution
  First Due Process Clause ......................................................................................... 12

  Fourteenth Amendment .................................................................................. 9, 10, 11

California Constitution
  Article V, § 13 ........................................................................................................... 9

**OTHER AUTHORITIES**

Californians Against Sexual Exploitation Act ("CASE Act") .............................................. *passim*

Proposition 35, § 3, ¶ 3 ........................................................................................... 6, 10

**INTRODUCTION**

On November 6, 2012, an overwhelming majority of Californians enacted Proposition 35, the "Californians Against Sexual Exploitation Act" ("CASE Act"). As relevant here, that measure will require sex offenders already subject to extensive registration requirements under the Sex Offender Registration Act (Penal Code sections 290-95) to report specified Internet identifying information. The California Department of Justice ("DOJ"), which oversees and operates the statewide registration system has, since 2011, already been collecting similar information and, over the next few months, will be making adjustments to incorporate the new requirements of the CASE Act. Though plaintiffs apparently disagree with the legislative wisdom of California's laws and procedures for tracking sex offenders generally, California's interest in implementing that program and its constitutionality is unquestionable. DOJ's practices and the CASE Act extends that vital program into the Internet.

Plaintiffs bring this action as a facial challenge to Proposition 35's requirement that registered sex offenders report, as a part of their normal registration process, any Internet identifiers they use, so they can be located and tracked if they attempt to prey upon innocent victims, particularly children. Plaintiffs now contend that these requirements are vague and overbroad and will either criminalize or chill the anonymous speech of this class of persons. As at least one plaintiff admits, California has routinely required disclosure of this information prior to Proposition 35 without any apparent confusion or chilling of anonymous speech.

Plaintiffs' motion ignores *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010), the only appellate decision on the constitutionality of laws requiring sex offenders to supply their Internet identifying information to law enforcement. In that decision, the Tenth Circuit upheld a Utah essentially identical to the challenged portions of the CASE Act. The authorities relied on by plaintiffs, *Doe v. Nebraska*, --- F.Supp.2d ---, Nos. 8:09CV456,4:10CV3266,4:10CV3005, 2012 WL 4923131 2 (D. Neb. Oct. 17, 2012) and *White v. Baker*, 696 F. Supp.2d 1289 (N.D. Ga. 2010) address vastly different laws. Plaintiffs' arguments that the CASE Act's statutory definitions of the required Internet information are vague and violate due process ignore many factors: the long-standing procedures for specifying the required information on DOJ registration forms, the

1

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

scienter requirement in prosecuting failure to register items, and that the definitions are, in fact, clear. Finally, plaintiffs' own authorities indicated that their freedom of association arguments have no merit because no lists of sites or groups are required.

Particularly given plaintiffs' heavy burden to show that a statutory scheme still being implemented is facially unconstitutional, their motion for a preliminary injunction should be denied.

## STATEMENT OF FACTS

The Sex Offender Registration Act, California Penal Code Sections 290-94, mandates that certain persons convicted of specified sex offenses are required to register in the state as a sex offender. The law "assure[s] that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." *In re Alva*, 33 Cal. 4th 254, 264 (2004). As applicable here, the law "simply requires a convicted offender to provide, and to update at specified intervals, information logically calculated to assist law enforcement authorities to monitor his or her whereabouts, while it protects the offender's privacy by carefully restricting the public dissemination of this information." *Id.* at p. 289. "Given the 'frightening and high' danger of long-term recidivism by this class of offenders, the requirement has a legitimate regulatory aim." *Id.* (quoting *Smith v. Doe*, 538 U.S. 84, 103 (2003)).[1]

I. **SEX OFFENDER REGISTRATION PROCESS**

Prior to release or parole from a jail, prison, or other place of confinement, any person subject to sex offender registration is informed of their duty to register. Schweig Dec., ¶ 6; Cal. Penal Code § 290.017, subd. (a).[2] The person must read and sign a form required by the Department of Justice ("DOJ"), stating that the duty been explained to the person. *Id.* The

---

[1] Given the well-established purpose, history, and constitutionality of sex offender registration statutes, it is not necessary to repeat the broader background on those issues in the Opposition Memorandum filed today by the Intervenors, the Proponents of Proposition 35. DOJ incorporates those points herein and will simply add that, contrary to the suggestion of plaintiffs, certain offenders can apply for a certificate of rehabilitation and be removed from the registration requirements. Cal. Penal Code § 290.5.

[2] Linda Schweig is the Program Manager of DOJ's Violent Crime Information Center and her declaration is filed herewith. Schweig Dec., ¶ 1.

2

1  official in charge of the place of confinement or hospital obtains the address where the person
2  expects to reside upon release and reports it to DOJ. *Id.* Copies of the completed form are given
3  to the person and sent to DOJ and the appropriate law enforcement agency or agencies having
4  jurisdiction over the place the person expects to reside upon discharge, parole, or release. Cal.
5  Penal Code § 290.017, subd. (b). When a person subject to registration is released from
6  probation, the probation department undertakes those duties to notify the person, report the
7  expected residence, and complete and transmit the DOJ form. Schweig Dec., ¶ 6; Cal. Penal
8  Code § 290.017, subd. (c). In the case of a person granted conditional release without supervised
9  probation, or discharged upon payment of a fine, they must first be informed of the duty to
10 register in open court by the court, and the court (or a bailiff) requires the person to read and sign
11 the DOJ form, report the expected address, and transmit the copies of the form. Schweig Dec., ¶
12 6; Cal. Penal Code § 290.017, subd. (d). In all of these situations, the DOJ Form 8047 is used.
13 Schweig Dec., ¶ 7.

14     The released person then has five working days to register (or re-register under certain
15 circumstances if previously registered). Cal. Penal Code § 290.015, subd. (a). The offender must
16 register with the police department or sheriff's office, based on their residence. Cal. Penal Code §
17 290, subd. (b). Thereafter, the registrant must annually register and update the required
18 information within 5 working days of their birthday or, if they are transient, every 30 days. Cal.
19 Penal Code § 290.015, subds. (a), (c).

20     The initial and updated registrations are done using DOJ Form 8102S. Schweig Dec., ¶ 13,
21 Exh. A. Immediately prior to the passage of the CASE Act, the Sex Offender Registration Act
22 required that the registration consist of: (1) a written statement giving information as shall be
23 required by DOJ and giving the name and address of the person's employer, and the address of the
24 person's places of employment; (2) fingerprints and a current photograph; (3) license plate
25 number of any vehicle owned by, regularly driven by, or registered in the name of the person; (4)
26 notice to the person that they may have a duty to register in any other state if they relocate, and
27 (5) copies of adequate proof of residence. Former Cal. Penal Code §§ 290.012, subd. (a),
28 290.015, subd. (a). If the person has no residence and no reasonable expectation of obtaining one

3

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

in the foreseeable future, the person can state that fact in writing. Cal. Penal Code § 290.015, subd. (a)(5).

The registering law enforcement agency forwards the initial information to DOJ within three days. Cal. Penal Code § 290.015, subd. (b). Penal Code Section 290.012, subdivision (d), anticipates that registering agencies will submit the registrations directly into the DOJ Violent Crime Information Network, which is discussed shortly.

As noted, the registration form can require such information as may be required by DOJ. Penal Code §§ 290.012, subd. (a)(1), 290.015, subd. (a). Pursuant to that authority, the DOJ started collecting information from registrants in June, 2011, concerning their email addresses and screen names/social networks. Schweig Dec., ¶ 13. Specifically, the current Form 8102S has fields to report "E-MAIL ADDRESS" and "SCREEN NAME(S)/SOCIAL NETWORK(S). *Id.* Exh. A, Page 1 of 4. Plaintiff Jack Roe acknowledges that he was required to provide this information to the sheriff's department when he registered in September, 2012. Doc. 17 (Roe Dec.), ¶ 21.[3]

## II. THE CASE ACT'S IMPACT ON THE CURRENT REGISTRATION PROCESS

While law enforcement agencies have been collecting, and DOJ has been receiving, Internet information from registrants for over a year prior to the passage of the CASE Act, the passage of that initiative measure will require some adjustments to the current registration procedures. The CASE Act amended the above-described Penal Code sections 290.012 and 290.015 to expressly require that Internet identifying information be collected during the registration process. Specifically, that initiative measure added three items to the list of identifying information that must be collected from a registrant during the initial and periodic update registrations: "a list of any and all Internet identifiers established or used by the person," "a list of any and all Internet service providers used by the person," and a signed statement that the registrant is required to register and update that information, as required by the Sex Offender Registration Act. Cal. Penal

---

[3] Upon issuance of the Temporary Restraining Order in this action, DOJ posted notice that law enforcement agencies should leave those fields blank and not collect that information from registrants. Schweig Dec., ¶ 15. That is important information that should be collected and available to law enforcement while this matter is litigated.

4

Code §§ 290.012, subd. (a) (amended eff. Nov. 7, 2012), 290.015 subds. (a)(4)-(6) (added eff. Nov. 7, 2012). In addition, the CASE Act added a new requirement to Penal Code Section 290.014, which required (and still requires) that registering agencies be informed if the registrant changes their name. Cal. Penal Code § 290.014, subd. (a). The initiative measure added a new subdivision, which requires:

> b) If any person who is required to register pursuant to the [Sex Offender Registration] Act adds or changes his or her account with an Internet service provider or adds or changes an Internet identifier, the person shall send written notice of the addition or change to the law enforcement agency or agencies with which he or she is currently registered within 24 hours. The law enforcement agency or agencies shall make this information available to the Department of Justice. Each person to whom this subdivision applies at the time this subdivision becomes effective shall immediately provide the information required by this subdivision.

Cal. Penal Code § 290.014, subd. (b) (eff. Nov. 7, 2012)[4]. Thus, a registrant will be required to notify his registering agency of that information promptly, similarly to their current duty to report any name changes.

DOJ's Violent Crime Information Center is currently taking steps to implement these new requirements of the CASE Act. Various of the Center's units maintain the California Sex and Arson Registry ("CSAR"), the central state repository for sex offender registration information. Shweig Dec, ¶¶ 1, 4-5, 10; *See* Cal. Penal Code §§ 14200, 14201.1, 14202, subd. (b)(3). This program expects to have new registration forms ready for use to accommodate the new requirements by January, 2013. Schweig Dec, ¶ 14. In addition, DOJ's software is being updated to allow law enforcement agencies to enter Internet identifying information directly into the central law enforcement repository for sex offender registration information. *Id.* ¶ 14. Currently, registering agencies generally enter sex offender registration information into the registry using the California Law Enforcement Telecommunications System ("CLETS"), but that system does not allow them to enter Internet identifying information directly into the registry. *Id.* ¶ 13. DOJ is currently updating and testing an alternative to CLETS, a graphical user interface that registering agencies will be able use to input CSAR information. *Id.* ¶¶ 13-14. It is anticipated

---

[4] The CASE Act does not, as plaintiffs contend, require a registrant to compile "a comprehensive list" of all online forums which they have visited. Doc. 8 (Pls' Memo), at 7-8.

5

1  that the new system will be completed in March, 2013, and the updates required to allow direct
2  entry of Internet information into CSAR will be implemented in conjunction with that
3  comprehensive upgrade. *Id.* ¶ 14.

### III.  SECURITY AND USE OF SEX OFFENDER REGISTRANT INTERNET INFORMATION

Except as otherwise provided by law, the registration statements required by the Sex Offender Registration Act are not open to inspection by the public or any person other than a regularly employed peace officer or other law enforcement officer. Cal. Penal Code § 290.021; *See* Cal. Gov't Code § 6254, subd. (f) (generally excluding certain files of DOJ and local police agencies from disclosure under the Public Records Act). Upon initial entry into the sex offender registry, a law enforcement user is required to acknowledge a "need to know, right to know' policy before access is permitted. Schweig Dec., ¶ 12. In relevant part, the CASE Act provides that it is strengthening sex offender registration requirements "to allow law enforcement to track and prevent online sex offenses." Prop. 35, § 3, ¶ 3 (operative Nov. 7, 2012).

CSAR user accounts are managed through the Justice Identity Management System, which requires an administrator for each law enforcement agency to provide verified identifying information. Schweig Dec., ¶ 11. Access to CSAR through CLETS is governed by existing security measures for that telecommunications system. *Id.* ¶ 13. All access to CLETS is logged and DOJ or the local law enforcement agency can investigate and take appropriate action to remedy any unauthorized access. *Id.* While DOJ is preparing to implement the graphical user interface access to the registry, it is also preparing security measures for that new system that are anticipated to be similar to the CLETS procedures. *Id.* ¶ 14.

Currently, a law enforcement official can only search CSAR using certain criteria that do not include Internet identifying information. Schweig Dec., ¶ 12. To the limited extent that Internet indentifying information has been collected to date (*id.* ¶¶ 13-14), a law enforcement official can only query CSAR for that information by requesting that DOJ perform a search. *Id.* ¶ 12. In the event of child abduction or similar exigent circumstance, DOJ will perform that type of search upon written request. *Id.* Because of this record of the request, DOJ could investigate if made aware of any improper request. *Id.* During almost 20 years with DOJ, the current Program

6

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

1 Manager for the Violent Crime Information Center is not aware of any report or investigation of any such improper request to query CSAR. *Id.* ¶¶ 12. 16.

Notwithstanding these restrictions, having the Internet identifying information that is currently collected under DOJ's practices and that will be collected under the CASE Act is very useful in conducting an investigation. Morgester Dec, ¶ 12.[5] It is akin to having knowledge of a suspect's name, aliases, address, telephone number, fingerprints, and license plates. *Id.* It is a critical starting point for conducting investigations on the Internet. *Id.* Possession of this information may provide enough of a headstart to save a victim's life. *Id.* Having Internet identifying information, however, does not permit access to, or monitoring of, private communications. *Id.* ¶ 9. Under both federal and California law (which is sometimes more restrictive), judicial authorization is required to access private communications and even basic subscriber information associated with an email account. *Id.* ¶¶ 9-10. Moreover, a number of social media sites already bar registered sex offenders, deriving their identify from publically-available records. *Id.* ¶ 13.

Plaintiffs' purported fear of public disclosure of Internet identifying information is apparently based on Section 290.45 of the Penal Code. Doc 8 (Pls' Memo.) at 15:6-11. Under that statutory provision, "any designated law enforcement entity may provide information to the public about a person required to register as a sex offender pursuant to Section 290, by whatever means the entity deems appropriate, *when necessary to ensure the public safety based upon information available to the entity concerning that specific person*." Cal. Penal Code § 290.45, subd. (a)(1)(emphasis added). The disclosure must be accompanied by a statement that the purpose of the release of information is to allow members of the public to protect themselves and their children from sex offenders. *Id.* § 290.45, subd. (a)(2). Information not already disclosed on the statewide Megan's Law website (governed by Penal Code Section 290.46 and not implicated in this action) cannot be released on the Internet unless there is an warrant outstanding

---

[5] Robert Morgester is the Senior Assistant Attorney General for eCrime Unit and Privacy Enforcement and Protection Unit of the California Attorney General's Office and his declaration is filed herewith. Morgester Dec, ¶ 1.

7

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

for that person. *Id.* § 290.45, subd. (a)(3). A law enforcement entity may authorize persons and entities who receive the information under section 290.45 to disclose it to additional persons only if the entity determines that further disclosure will enhance the public safety and identifies the appropriate scope of further disclosure. *Id.* § 290.45, subd. (c)(1). A law enforcement entity may not authorize such further disclosure by its placement on an Internet Web site. *Id.* A person who receives information from a law enforcement entity may disclose that information only in the manner and to the extent authorized by the law enforcement entity. *Id.* § 290.45, subd. (c)(1). There are criminal penalties for improper use of the disclosed information. *Id.* § 290.45, subd. (e). Civil immunity for private parties is only extended to schools and childcare facilities and their employees and only extends to authorized, good faith dissemination of the information. *Id.* § 290.45, subd. (d)(2).

## ARGUMENT

### I. PLAINTIFFS DO NOT MEET THE HEAVY BURDEN FOR ISSUANCE OF A PRELIMINARY INJUNCTION ENJOINING OPERATION OF A STATE STATUTE

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995) (emphasis added by Supreme Court)). Plaintiffs seeking that remedy must establish: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (internal citation omitted). Nonetheless, Plaintiffs must make a showing of all four *Winter* factors even under the alternative sliding scale test. *Id.* at 1132, 1135.

8

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

1    In considering those factors, the Court should consider that "[a]ny time a State is enjoined
2    by a court from effectuating statutes enacted by representatives of its people, it suffers a form of
3    irreparable injury." *Maryland v. King,* No. 12A48, __ U.S. __, __ S. Ct. __, 2012 WL 3064878,
4    at *2 (Roberts, Circuit Justice 2012) citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
5    434 U.S. 1345, 1351 (Rehnquist, Circuit Justice 1977). "A strong factual record is therefore
6    necessary before a federal district court may enjoin a State agency." *Cupolo v. Bay Area Rapid*
7    *Transit*, 5 F.Supp.2d 1078, 1085 (N.D. Cal. 1997). Finally, plaintiffs apparently contend that an
8    injunction against the Attorney General would bind local law enforcement officials as well. Doc.
9    8 (Pls' Memo.), at 25. As explained, DOJ is tasked with implementing many central aspects of of
10   the challenged laws and the Attorney General has general supervisory powers over District
11   Attorneys and Sheriffs, but plaintiffs have cited not authority applying California law that an
12   injunction against her could directly bind local law enforcement agencies or personnel.
13   California law is to the contrary. See *People v. Brophy*, 49 Cal.App.2d 15, 28 (1942) (Article V,
14   section 13, of the California Constitution does not contemplate absolute control and direction of
15   sheriffs).

**II.    THE CASE ACT IS FACIALLY CONSTITUTIONAL UNDER THE FIRST AMENDMENT**

17   Plaintiffs' moving papers essentially ignore that the only appellate decision on the proper
18   standards for reviewing the challenged portions of the CASE Act under the First Amendment. In
19   *Doe v. Shurtleff*, 628 F.3d 1217 (10th Cir. 2010), the court rebuffed those challenges to a very
20   similar Utah that required certain offenders to provide Internet identifying information to law
21   enforcement officials. While there is some right to anonymous speech on the Internet, "a state
22   may permissibly infringe upon this right when its interest is important enough and the law is
23   appropriately tailored to meet the stated interest." *Id.* at 1222 (citing *Am. Constitutional Law*
24   *Found., Inc. v. Meyer*, 120 F.3d 1092, 1102 (10th Cir.1997)). In evaluating these interests, the
25   Supreme Court has suggested a distinction between the mandatory disclosure in public of a
26   speaker's identity and the requirement that a speaker provide information to the government that
27   could later be used to trace speech back to its source." *Id.* at 1222-23 (discussing *Buckley v.*
28   *American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999).

9

1    The Tenth Circuit rejected the plaintiff's argument that the Utah law was a content-based restriction because it barred completely anonymous speech by registrants. *Doe v. Shurtleff*, 628 F.3d at 1223. Like the CASE Act, "[t]he law says nothing about the ideas or opinions that Mr. Doe may or may not express, anonymously or otherwise . . . [n]either is it aimed at "supress[ing] the expression of unpopular views," . . . but rather it is directed towards aiding the police in solving crimes." *Id.* at 1223 (citing *Am. Target Adver., Inc. v. Giani*, 199 F.3d 1241, 1247 (10th Cir.2000).) The court therefore subjected the law to intermediate scrutiny, meaning it would be upheld if "the Act (1) serves a substantial government interest and (2) is 'narrowly drawn' to serve that interest 'without unnecessarily interfering with First Amendment freedoms.' " *Id.* (quoting *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)).

The Tenth Circuit had no doubt that states have a compelling interest in investigating kidnapping and sex-related crimes involving the Internet. *Doe v. Shurtleff*, 628 F.3d at 1223. We think it almost goes without saying and that plaintiffs would agree: protecting innocent victims (particularly children) from predatory Internet activities that may cause irreparable, lifetime harm and apprehending and prosecuting those offenders is a substantial California state interest. Thus, like the Utah law, the CASE Act must be upheld on First Amendment grounds if it is "readily susceptible to a narrowing construction that would make it constitutional." *Id.* at 1224 (citing *ACLU v. Johnson*, 194 F.3d 1149, 1159 (10th Cir.1999)).

Like the Utah statute, the CASE Act (Prop. 35, § 3, ¶ 3 (operative Nov. 7, 2012)) and DOJ's practices for collecting and disclosing non-public sex offender information described above both indicate that Internet identifying information is collected to track sex offenders online and to have available information on their virtual Internet "whereabouts." *Doe v. Shurtleff*, 628 F.3d at 1225. Nor, like the Utah statute, is the information subject to indiscriminate disclosure to the public. *Id.* at 1224-25. As explained above, that information could theoretically be disclosed only based on information regarding a particular individual, for specified public safety purposes, and the dissemination of that disclosed information is controlled. See Cal. Penal Code § 290.45. Plaintiffs have not even attempted to show why they fear that type of public safety disclosure regarding their personal Internet information (or regarding similar self-professed lower level

10

offenders not engaged in improper activities related to sex offenses involving the Internet). They thus have failed to establish both standing and the unconstitutionality of the CASE Act based on that specific procedure in the Sex Offender Registration Act.

Finally, the CASE Act, like the Utah law, is not overly broad. *Doe v. Shurtleff*, 628 F.3d at 1225.[6] To be unconstitutional under that doctrine, the law must be "substantially overbroad." *Id.* (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984)). There must be a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City. Council of L.A.,* 466 U.S., at 801. DOJ has been collecting Internet identifying information for over a year, yet has not received any legal challenge prior to this one. The challenged provisions cannot be invalidated on the grounds of a "single impermissible application." *Broadrick v. Oklahoma,* 413 U.S. 610, 630 (1973). Courts are uniform that "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008).

In construing the challenged provisions, Plaintiffs acknowledge that the CASE Act requires after-the-fact identification, and not prior speech restraint. The effect, they contend, is functionally and legally equivalent to a prohibition on pseudonymous speech online. Although Plaintiffs attempt to compare the CASE Act's Internet reporting requirements to the challenged statutes in *Doe v. Nebraska*, --- F.Supp.2d ---, Nos. 8:09CV456,4:10CV3266,4:10CV3005, 2012 WL 4923131 2 (D. Neb. Oct. 17, 2012) and *White v. Baker*, 696 F. Supp.2d 1289 (N.D. Ga. 2010) they do not point out the differences between the several statutes. The differences, which are substantial, speak volumes about the narrowness of the CASE Act's reporting requirements.

In *Doe v. Nebraska*, the registrants were required to relinquish any and all participation in certain Internet activities. 2012 WL 4923131, at * 2. The CASE Act does not require registrants

---

[6] The Proponent Interveners have fully briefed the inappropriateness of a facial overbreadth challenge to a statute like Proposition 35 that does not directly regulate speech. For the sake of brevity the Attorney General joins in, but does not repeat, that argument here.

11

to forego any participation in any specified Internet site. In *Doe*, the registrants were required to consent to a search of all the computers or electronic communication devices possessed by the person and installation of hardware or software to monitor the person's Internet usage on all the computers or electronic communication devices possessed by the person. *Id.* In *Doe*, Nebraska law also required registrants to disclose their account numbers. *Id.*, at *1. There is no such requirement in the CASE Act.

Finally, in *Doe v. Nebraska*, the registrants were required to disclose all blogs and Internet sites maintained by the person or to which the person has uploaded any content or posted any messages or information. 2012 WL 4923131, at * 1. Again, there is no such requirement in the CASE Act.

In *White v. Baker*, Georgia law required registrants to disclose their passwords which, when combined with other Internet information, may have allowed law enforcement to gain access to confidential communications without judicial supervision. 696 F. Supp.2d 1289, 1295. The CASE Act does not require disclosure of passwords and does not abrogate existing law restricting access to confidential communications absent judicial supervision.

The challenged provisions in the CASE Act are very narrowly tailored. To the extent that Plaintiffs' complaints are based on the fact that California requires lifetime registration, their complaints are not relevant to the facial validity of the CASE Act. In sum, even if the CASE Act regulated speech, which it does not, Plaintiffs cannot prove that the Internet reporting requirements are substantially overbroad.

### III. THE CASE ACT DOES NOT VIOLATE THE DUE PROCESS CLAUSE.

Plaintiffs' arguments that the new statutory definitions of "Internet service provider" and "Internet identifier" added by the CASE Act (Cal. Penal Code , § 290.024, subdivs. (a), (b) (eff. Nov. 7, 2012)) are ambiguous (and hence violate due process) completely ignore the basics of sex offender registration. As explained in the Statement of Facts, Internet information is collected from registrants by law enforcement agencies on forms supplied by DOJ and those forms provide specific fields for specific information. See Schweig Dec., Exh. A, Page 1 of 4 (fields to report "E-MAIL ADDRESS" and "SCREEN NAME(S)/SOCIAL NETWORK(S)). DOJ is the process

12

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

of issuing new forms that will similarly identify any new information now required to be collected by the CASE Act. *Id.*, ¶ 14. Registrants will not, as Professor Post opines, sit at home pondering a parade of horrible about the potential information they must report based on the statutory language. *Cf* Doc. 21 (Post Dec.) ¶¶ 18-62.[7] Instead, they will be required to supply that information based on certain labeled fields on a DOJ form supplied to them by the registering agency.

A statute comports with due process if it provides "a person of ordinary intelligence fair notice" of the proscribed behavior and provides sufficiently clear standards so as to avoid "seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). As the United States Supreme Court has emphasized,

> few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded.

*Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).

Moreover, a scienter requirement in a statute may also mitigate vagueness. *Craft v. Nat'l Park Serv.*, 34 F.3d 918, 922 (9th Cir. 1994). To support a conviction of willful failure to perform an act required by Sex Offender Registration Act, there must be evidence that the defendant knew that the particular requirement applied to him. *People v. Aragon*, 207 Cal.App.4th 504, 510 (2012); *People v. Edgar* 104 Cal.App.4th 210, 212 (2002). Given the specific procedures for registering sex offender information, that forms to implement the CASE Act are still being formulated by DOJ, and the legal requirements to convict a person for failure to report a particular item, the chance of an unfair or discriminatory application of the new statutory definitions is minimal, if not non-existent.

Moreover, the statutory definitions of both "Internet service provider" and "Internet identifier" are themselves sufficiently clear,  See Cal. Penal Code § 290.024, subdivs. (a), (b) (eff. Nov. 7, 2012). Regarding the Act's definition of "Internet service provider," it definition is

---

[7] DOJ is filing objections to the Post Declaration herewith.

13

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

similar to the one upheld by the 10th Circuit and the federal definition. *Doe v. Shurtleff*, 628 F.3d at 1221, n.1 (online identifier means "any electronic mail, chat, instant messenger, social networking, or similar name used for Internet communications"); See 42 U.S.C. § 16915a ("Internet identifiers" means electronic mail addresses and other designations used for self-identification or routing in Internet communication or posting."). Those terms, as well as "Internet service provider" are used in everyday language and have an objective and ordinary meanings that can be discerned from a dictionary. Finally, the inclusion of "similar" identifiers and services in the enumerated list of "Internet identifiers" does not create uncertainty. "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores v. Adams*, 532 U.S. 15, 114-15 (2001). All of the enumerated items ("electronic mail address," "user name," and "screen name") used in Penal Code Section 290.024, subdivision (b) refer to characters or symbols used to identify person on the Internet. "Similar" identifying information would likewise fall into the same category.

**IV. THE CASE ACT DOES NOT IMPLICATE PLAINTIFFS' FREEDOM OF ASSOCIATION**

A sex offender registration law cannot violate a registrant's freedom of association where it does not required disclosure of membership in any organizations. *White v. Baker,* 696 F.Supp.2d, at 1312. The CASE Act no more impacts a registrant's right to anonymously associate with others than other identifying information (e.g. vehicle license information) that must routinely be reported to the government.

/ / /

/ / /

14

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for a preliminary injunction should be denied.

Dated:  November 26, 2012　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　KAMALA D. HARRIS
　　　　　　　　　　　　　　　　　　　　　Attorney General of California
　　　　　　　　　　　　　　　　　　　　　PETER K. SOUTHWORTH
　　　　　　　　　　　　　　　　　　　　　Supervising Deputy Attorney General

　　　　　　　　　　　　　　　　　　　　　/s/ ROBERT D. WILSON

　　　　　　　　　　　　　　　　　　　　　ROBERT D. WILSON
　　　　　　　　　　　　　　　　　　　　　Deputy Attorney General
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Kamala Harris,*
　　　　　　　　　　　　　　　　　　　　　*Attorney General of the State of California*

15

Attorney General's Opp. To Motion for Prelim. Inj. (3:12-cv-05713-TEH)