IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN DOE, et al.,

                Plaintiffs,

v.

KAMALA D. HARRIS, et al.,

                Defendants.

NO. C12-5713 TEH

<u>ORDER WITH QUESTIONS FOR COUNSEL FOR DECEMBER 17 HEARING</u>

This Case will come before the Court on December 17, 2012, on Plaintiffs' Motion for a Preliminary Injunction and on the Motion to Intervene filed by the official proponents of Proposition 35. The Court would like the parties to be prepared to answer the following questions at the hearing. If Proponents' motion is granted, they may respond to questions related to the Motion for a Preliminary Injunction, to the extent that their responses are not duplicative of State Defendant's responses. The parties need not submit answers in writing but shall come to the December 17 hearing prepared to address the following:

**Re: Intervention**

<u>For Plaintiffs and Proponents</u>

1. The Court's understanding is that the Ninth Circuit has not squarely ruled on the question of whether Article III standing is required for intervention when another party with standing on the same side as the intervenor remains in the case, and that other circuits are split. In light of this, wouldn't it be within the Court's broad discretion to grant permissive intervention?

2. How, if at all, is the Supreme Court's grant of certiorari in *Perry* relevant to the Court's determination whether Proponents should be permitted to intervene?

**Re: Preliminary Injunction**

For Both Sides

1. If the Court concludes that the CASE Act's definition of "Internet service provider" is vague or overbroad, can the Court construe the definition narrowly in order to save it? If so, how do you propose the Court construe it?

2. Would it be permissible for a court to construe the requirement to provide "A list of any and all Internet service providers used by the person," § 290.015(5), as only requiring the reporting of Internet service providers with which the registrant has an open account at the time of registration?

3. Does § 290.018's scienter element mitigate the effects of any ambiguity with regard to the CASE Act's reporting requirements? Why or why not?

4. Is speech by sex offenders entitled to the same level of First Amendment protection as speech by anyone else? What types of speech could RSOs be undertaking on the Internet that would not be fully protected under the First Amendment?

5. Can the government legitimately use the Internet-related information provided under the CASE Act to monitor registrants' speech on the Internet in the absence of a specific criminal investigation? In other words, is surveillance a permissible purpose?

6. If surveillance in the absence of a specific criminal investigation is not a permissible purpose, what in the California registration system prevents local law enforcement from

deciding that the best way to ensure public safety is to monitor RSOs' pseudonymous speech?

7. If such surveillance is permissible, what makes it permissible, assuming we are talking about people who are not on probation or parole? Do the cases upholding sex offender registration generally stand for the proposition that sex offenders can be subjected to speech surveillance?

8. Assume for the purposes of argument that there is no risk of public disclosure of the RSOs' internet identifiers. Is that the end of the First Amendment (as opposed to the vagueness) claim?

9. What limitations, if any, are there on the means by which a law enforcement entity may disseminate a RSO's Internet identifiers and ISPs to the public? How do law enforcement entities determine that public dissemination of information about a RSO is "necessary to ensure the public safety"?

10. I'd like both sides to weigh in on whether the following online usernames/identifiers would need to be reported:

    a. Online banking username

    b. Amazon.com username

    c. New York Times username, if posting about an article

    d. New York Times username, if user reads content but does not post

    e. Best Buy username

    f. Usernames used for blogging

      g. An old email address or Myspace username associated with an account that the RSO does not use or check

11. The Government states that law enforcement officers' access to the registrants' information is governed by a "need to know/right to know" policy. What governs law enforcement officers' "need to know" and "right to know"?

For Plaintiffs

1. What is your best argument that this is a class-of-speaker regulation triggering strict scrutiny?

2. *Buckley* dealt with public disclosure of the names of ballot initiative circulators. What case supports your position that a requirement to disclose one's name to law enforcement infringes on the right to speak anonymously, setting aside the possibility of wider disclosure/dissemination?

3. Where in the First Amendment analysis does the 24-hour reporting time issue come into play?

For Defendant

1. The overarching issue that presents itself with regard to the tailoring of this statute is how the information gained through the CASE Act's reporting requirements would help combat human trafficking and/or sex crimes. For instance:

      a. State: You assert that this statute will help you "protect[] innocent victims (particularly children) from predatory Internet activities." State's Opp'n at 10. How so?

      b. Proponents: You posit that "law enforcement will use sex offenders' Internet identifiers to determine whether the email address of a person who used the Internet to lure a child into human trafficking belongs to a registered sex offender." Prop's Opp'n at 1. Please

4

explain concretely how law enforcement will be presented with the scenario described and how the Internet identifiers will help.

      c. Proponents: you assert that "the state will be far better able to quickly identify and investigate suspects when presented with evidence that a crime involving the use of the Internet to facilitate trafficking or sexual exploitation of minors has been or is about to be committed." Prop's Opp'n at 17 & n.11. Please explain how this is so.

      d. Proponents: you cite the "vital prophylactic purpose" of requiring RSOs to turn over this information because, "After all, a human trafficker who must begin turning over his Internet identifiers immediately may be deterred from online predatory conduct immediately, based on the knowledge that the police will eventually track him down." Prop's Opp'n at 24. Please explain what fact-based evidence you have that this is so.

      e. How would knowing a registrant's ISP be of use to law enforcement?

2. Is there any connection between these provisions and human trafficking? Is there evidence that RSOs are more likely to be human traffickers than non-RSOs?

3. Do you contend that the requirement to report ISPs applies to ISPs that registrants use when they access the Internet from public places such as Internet cafés?

4. What types of online communications by RSOs would it be most helpful to law enforcement to be able to monitor?

5. How can speech posted on publicly accessible (without a login) websites and forums such as the New York Times or the Reform website be used to commit sex crimes?

6. Could the CASE Act's goals be achieved if its registration requirements applied to a narrower class of RSOs, such as those who were at high risk of reoffending or those who used the Internet to commit a sex offense in the past?

5

**IT IS SO ORDERED.**

Dated: 12/13/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT